## COLLEY *vs.* MERRILL & ALS.

A bill of exceptions under the statute of *Westm.* 2, *ch.* 31, is examinable only after judgment; nor then, but upon a writ of error.

The statute of *Westm.* 2, *ch.* 31, it seems, is no longer in force in this State, so far as it regards the Supreme Judicial Court; it being virtually superseded by our statute, providing for exceptions in a more summary manner.

In the argument upon a bill of exceptions, whether under our statute, in the summary mode, or under the statute of *Westm.* 2, *ch.* 31, followed by a writ of error, the party excepting is confined to the objections taken at the trial, and stated on the face of the bill.

The consignee of goods for sale, is at liberty to incur upon them all such expenses as a prudent man would find necessary, in the discreet management of his own affairs.

Thus, where the owner of a vessel conveyed her to his creditor, to be sold by him to the best advantage, and after payment of the debt, the surplus to be paid over to himself; and the creditor caused her to be sold by a ship-broker;—it was held that the broker's commissions were a reasonable charge upon the gross proceeds of sale, which the owner was bound to allow.

In this case, which was *assumpsit,* in addition to the general counts, the plaintiff, in his third count, declared that on the fourth day of *May,* 1827, in consideration that he would give the defendants a bill of sale of a certain vessel, to be built on *Presumpscot* river, the defendants promised to pay him therefor at the rate of twenty one dollars per ton; and averred that on the tenth day of *June* following, he gave them a bill of sale of the vessel, whereby and by reason of their promise, they became liable to pay, &c. The writ bore date January 1, 1828.

At the trial, which was upon the general issue, the plaintiff produced a written contract between himself and the defendants, who

were retail grocers and traders in *Portland,* by which it appeared that on *May* 4*th,* 1827, they agreed to furnish him, from time to time, with such quantities of goods as should be necessary to build a vessel of about 160 tons, and he engaged that when the keel should be laid, and the vessel raised, he would make and execute to them, a good and sufficient bill of sale of said vessel, to secure the payment for whatever goods they might furnish ; " and after the sale of said vessel to the best advantage, and payment of said *Merrills,* " the surplus proceeds to be refunded to said *Colley.*" On the back of the paper was this further memorandum, signed by the parties ;—" It is understood by the within agreement that the said *Colley* is to have a credit of four months on the goods, after which interest is to be charged, until the debt is paid from the proceeds of the vessel when sold."

The plaintiff also produced the bill of sale given to him by the defendants, *July* 13, 1827, pursuant to the agreement; also the carpenter's certificate to the collector of the customs, dated *December* 5, 1827, stating the admeasurement of the vessel, which was launched in *November* preceding ; on the back of which certificate was a conveyance of the vessel by the defendants to *Eleazer Greeley & Son,* ship-brokers and commission merchants, dated *December* 7, 1827 ; and another from the brokers to *Reuben Mitchell,* dated *January* 2, 1828.

The defendants proved that before and after the vessel was launched, the plaintiff, at several times, requested them to sell her as soon as convenient ; that they asked his advice about the employment of some merchant for that purpose, and named the Messrs. *Greeleys,* to which the plaintiff assented. They also proved that at the time of the conveyance to *Greeley & Son,* the latter gave them a counter writing, stating that they were to sell the vessel on commissions, and pay to the defendants, or their order, the net proceeds of sales, after deducting all expenses, and all sums of money they had advanced to the defendants, or might become accountable for, on their account. These advances, made between *October* 30, and *December* 22, amounted to 900 dollars ; and the broker's commissions on the sales, were $50 90. The defendants also proved that

the sale of the vessel was not hastened nor retarded by their having had advances of money from the *Greeleys*; and that the sale to *Mitchell* was on the usual credit of four, six and nine months, in equal payments, with interest after. None of these transactions between the defendants and the brokers were known to the plaintiff.

The Chief Justice instructed the jury that in ascertaining the amount for which the defendants were chargeable as the proceeds of the vessel, they should take the sum for which she was actually sold by the brokers, if that was her fair value; or otherwise, her true value in the market; but that the charge for the brokers' commissions was not, by law, allowable. And a verdict being returned for the plaintiff, the defendants tendered a bill of exceptions to the decision of the Chief Justice, respecting the commissions, which was sealed and allowed.

The defendants also moved in arrest of judgment, because, 1st, the plaintiff had declared on a parol contract, made *May* 4, 1827, to pay twenty-one dollars per ton for the vessel, upon delivery of the bill of sale; but had proved a written contract of the same day, of a different tenor and effect; yet the jury had found a general verdict for the plaintiff:—2d. By the written contract, the defendants were not chargeable for the value or proceeds of the vessel, till she was sold and payment received by them therefor; but the plaintiff had commenced this action before either of those events had happened:—3d. The plaintiff's third count contained no legal cause of action against the defendants:—4th. Upon the whole record the plaintiff was not entitled by law to recover in this action.

*Greenleaf*, for the defendants, said that the whole case being now before the court by the bill of exceptions, it was competent for them to show in this court, in arrest of judgment, any thing apparent on the record, which went to the right of the plaintiff to recover. And he contended that having shown a special contract in writing, the plaintiff could not recover on the general counts, while that contract remained in force. 1 *Dane's Abr.* 223, 224, 226, 227, 229. *Harris v. Oke, Bull. N. P.* 139, 140.

And the action was prematurely brought. The conveyance to *Greeley & Son* was in fact merely a mortgage, with power to sell;

and their advancements to the defendants were but loans, reimbursable out of the actual sales. Hence the plaintiff had no right of action till after the actual sale to *Mitchell*, and this was not till after this suit was commenced. Nor did the conveyance to *Greeley & Son* give any new right of action to the plaintiff; since a pawnee may always mortgage or sell his interest in the thing pleged, without giving the owner any greater rights than before. *Moses v. Conham Owen*, 123. *Montagu on lien, app.* 170, 171. *Jarvis v. Rogers*, 15 *Mass.* 408; and if this is not admitted in general, yet where goods are deposited by way of security for a loan of money, the lender's rights are far more extensive than such as accrue under an ordinary lien in the way of trade. *Pothonier v. Dawson*, 1 *Holt*, 383.

As to the charge of commissions, it results necessarily from the employment of a broker, to which the plaintiff assented.

*Longfellow* and *Deblois* for the plaintiff.

Weston J. delivered the opinion of the Court at the ensuing term in *Kennebec.*

Before we proceed to other points made in this cause, it may be proper to consider the character of the bill of exceptions, which has been allowed under the seal of the Chief Justice.

Prior to the statute of *Westminster* the second, 13 *Ed.* 1. *cap.* 31, there was no mode of revising or correcting the direction or opinion of the presiding judge in the trial of a cause, in any matter of law, not apparent upon the record. By this statute, exceptions might be made to such opinion or direction, which it was made the duty of the judge to allow and seal, and thereupon such matter became part of the record, and as such was examinable upon writ of error. Sir *Edward Coke,* in his commentary upon this statute, 2 *Inst.* 427, says, " albeit the letter of this branch seemeth to extend to the justices of the Common Pleas only, by reason of these words, *et si forte ad querimoniam de facto justitiariorum venire faciat dominus rex recordum coram eo,* [and if the King, upon complaint made of the justices, cause the record to come before him,] which is by writ of error into the King's bench; yet that is put but for an example; and this

act extendeth not only to all other courts of record.; for upon judgments given in them, a writ of error lieth in the King's bench; but to the county court, the hundred, and the court baron, for therein the judges were more likely to err; and albeit of judgments given in them a writ of error lieth not, but a writ of false judgment in the court of Common Pleas, yet the case being in the same, or greater mischief, the purview of the statute doth extend to those inferior courts." *Blackstone* states, 3 *Com.* 372, "This bill of exceptions is in the nature of an appeal; examinable, not in the court out of which the record issues for the trial at *nisi prius*, but in the next immediate superior court, upon a writ of error, after judgment given in the court below." And in this opinion, he is fully supported by the practice of the English courts. *Kensington*, plaintiff in error, v. *Inglis & al.* 8 *East* 276, is a case in point. That was an action originally brought in the Common Pleas by the defendants in error. A verdict was found for the plaintiff below, under the direction of the Lord Chief Justice of the Common Pleas, before whom the cause was tried, to whom a bill of exceptions was tendered, which was allowed and sealed by him. These exceptions were not considered by the court of Common Pleas, who were in the possession of the record, although they must have been made a part of the *postea*, but were, after judgment, according to the course of judicial proceedings there, made the subject of examination by the King's bench, upon a writ of error. *Buller*, in his *Nisi Prius*, 316, says, a bill of exceptions can be used only on a writ of error; and therefore where a writ of error will not lie, there cannot be a bill of exceptions. The same opinion is recognized in 3 *Dane, ch.* 100 *art.* 1, *sec.* 7. And in accordance with this principle, Mr. *Dane* further states in *sec.* 19 of the same article, that when allowed, the party cannot move in arrest of judgment on the point in the bill of exceptions; his proper remedy is a writ of error; and for this he cites 3 *Lev.* 297, and 2 *Jones*, 217. And we are satisfied that the bill of exceptions, under the statute of *Westminster* the second, is examinable only after judgment, and that upon writ of error. With regard to the writ of false judgment, which Sir *Edward Coke* thinks would lie in certain cases

upon exceptions, no such process is known in our practice, nor have we any courts, to which it might properly be directed.

The counsel for the defendants contends that the exceptions before us were tendered and allowed, under the statute of *Westminster* the second. They are allowed under the seal of the Chief Justice ; and in point of form may comport with what that statute required. It may however be worthy of grave consideration, whether this statute can be held any longer applicable to proceedings in this court ; since a more simple, summary, and less expensive mode of revising questions, which may be presented by bills of exceptions, has been provided by our own statute. The constitution of this State, *art.* 10, *sec.* 3, provides that all laws, in force at the time of its adoption, should remain and be in force, until altered or repealed by the legislature. The statute of *Westminster* made exceptions under it the basis of revision by a superior court. As this court is supreme in its judicial capacity, its errors cannot be corrected by any other tribunal. But as in our practice, writs of error are brought returnable to this court, for the revisal of its own judgments, if we had no statute provision on the subject of exceptions, it might be strongly contended that they might be tendered under the statute of *Westminster.* But the legislature having made special provision for exceptions in the progress of trials in this court, and the mode by them prescribed being manifestly an improvement upon that of *Westminster,* avoiding expense and delay which are altogether unnecessary ; so far as that statute applied to this court, it may be held to be revised and altered by the legislature. It is true a new statute remedy does not usually abrogate a remedy at common law, and English statutes adopted here have been regarded as a part of our common law ; yet when any of the provisions in English statutes have become the subject of legislation here, our own enactments, although not excluding their operation in terms, as far as their purview extends, have been regarded as superseding those adopted from the mother country. However, upon this point we give no decisive opinion ; as if the English statute is still in force as it respects this court, and the bill in this case is considered as tendered under that statute, it cannot be made use of to arrest or delay the judgment claimed by the plaintiff.

From the course of the argument, it seems to have been understood that, on a bill under the English statute, any objection which might be raised from the evidence stated, although not taken at the trial, is open to the party excepting ; and that he is not confined to the point there raised, as he would be in exceptions under our statute. We do not find that this distinction is warranted by the authorities. In the argument of the case before cited from *East*, the counsel for the plaintiff in error attempted to urge a point not taken at the trial ; but the whole court agreed that he was precluded from doing so, inasmuch as the point arose, if at all, out of the evidence stated in the bill of exceptions ; in arguing which the plaintiff in error was confined to the objections taken at the trial, and stated on the face of the bill, as had been decided in the house of Lords in the case of *Rowe v. Power*, 2 *New Rep*. 36, on a bill of exceptions from Ireland. The same opinion was held in *Van Gordon v. Jackson*, 5 *Johns*. 467, and *Frier v. Jackson*, 8 *Johns*. 507, the statute of *New York* using nearly the same words with the statute of *Westminster*. All questions in relation to the competency and effect of evidence must be raised at the trial, and before verdict. It is too late afterwards. *Lanuse v. Barker*, 10 *Johns*. 312. *Jones v. Insurance Company of North America*, 4 *Dall*. 249.

Upon this view of the exceptions, under whatever statute tendered, the only point open to examination is in relation to the direction of the Chief Justice, touching the commissions paid to *Greeley*, and claimed as a fair charge against the plaintiff. The defendants are therefore precluded from many of the objections, which have been elaborately discussed in argument ; whether taken on writ of error, or in the mode prescribed by our statute.

The defendants have had a continuance, which the statute allows upon exceptions, and their counsel has moved the court to grant a new trial, or such other relief, as to law and justice may appertain. Instead of suffering judgment to go against them, and bringing a writ of error, which is the remedy provided by the statute of *Westminster*, they have claimed the benefit of the statute summary mode. We shall proceed therefore to consider the exceptions, which we are warranted in doing, as having been tendered and allowed under our statute.

In regard to the commissions, whether they ought to be allowed or not, we think, must depend upon facts which the jury have not settled by their verdict. The defendants were bound to sell the vessel, or cause her to be sold, to the best advantage. In doing this, they were not at liberty to incur any more expense than a prudent man would find necessary, in the discreet management of his own concerns. For such expense, if there be no usage in *Portland* or its neighborhood establishing a different rule, to which the parties may be presumed to have had reference in the contract, we are of opinion the defendants have a just claim to be reimbursed. As the jury have not passed upon the prudence or necessity of this expense, or upon the usage, if any exists, by which it may be adjusted, the verdict must be set aside and a new trial granted, unless the plaintiff will release to the defendants the amount of the commissions ; in which case judgment may be rendered on the verdict.