THE STATE *ex rel.* THOMAS V. HOBLITZELLE, *Recorder of Voters of St. Louis, Appellant.*

1. **Poll Books, etc.; Inspection of:** CITY OF ST. LOUIS. One whose object is to vindicate some public or private right is entitled to inspect the registration lists, poll books, and lists in the custody of the recorder of voters of the city of St. Louis and used at an election in said city.

2. **Mandamus.** Mandamus will lie to compel the recorder of voters to grant such inspection.

*Appeal from the Circuit Court of St. Louis City.*—HON. A. M. THAYER, Judge.

AFFIRMED.

*Leverett Bell* for appellant.

(1) The jurisdiction of the courts to control by mandamus the action of a public officer is limited to cases where the officer refuses to perform a specific act, the performance of which is enjoined on him by the law governing his office. If the matter is one resting in the discretion of the officer, or if there is no provision of law directing the execution of the particular act, the writ must be refused. *State, etc., v. County Court,* 41 Mo. 221; *State, etc., v. Garesche,* 65 Mo. 480. (2) Under the terms of the act of March 31, 1883, the poll books and registration lists specified in the alternative writ are not public records and are not open to inspection, except at the official canvass following the election, or as evidence in a case of contested election. (3) The present proceeding is based on the statement that the relator intends to contest under the statute the election held in the city of St. Louis on April 7, 1885, of Martin Neiser to the office of city marshal of the city of St. Louis. The statute law

of this state contains no provision vesting jurisdiction in any court in Missouri to hear and determine the case referred to, and the relator is, therefore, on his own theory, not entitled to an inspection of the poll books and registration lists containing the returns of said election.

*A. R. Taylor, Dyer, Lee & Ellis,* and *G. D. Reynolds* for respondent.

NORTON, J.—This case is before us on the appeal of defendant from the judgment of the circuit court of the city of St. Louis, awarding a peremptory writ of mandamus directing defendant to allow relator to inspect the registration lists, poll books, and lists used at an election held in said city on the seventh day of April, 1885, and on file in the office of the defendant as recorder of voters. At said election, relator was a candidate for the office of city marshal, and one Martin Neiser was also a candidate for the same office and received a certificate of election.

Relator in substance avers that he received a majority of the votes cast at said election, and was in fact duly elected, and intends to contest the election with a view to establish his right to the said office, and that for the purpose of enabling him to prepare his notice of contest, and state the grounds upon which it is based, he demanded of defendant that he and his attorneys be permitted to inspect the registration list and poll books used at said election, which defendant refused. Upon such refusal this proceeding by mandamus to compel defendant to allow such inspection was instituted, awarding a peremptory writ. While it was conceded by counsel in the argument before the court, that as a rule records required to be kept in the office of a public officer are public records and open to inspection under the supervision of the officer; and while it was admitted

that the recorder of voters in the city of St. Louis was a public officer, and the registration lists and poll books, when filed in his office to be "securely kept" by him, were not private, but public records, it was insisted by counsel in an elaborate argument that the law of 1883 discloses a legislative intent that such registration lists and poll books should not be open to inspection, and that as to them the rule above stated was inoperative for that reason. In support of this position, it is argued that inasmuch as it is provided in said act of 1883 that when a person who had been appointed judge of an election fails or refuses to serve, the voters at the poll may elect one to serve in his place, subscribing "their names in witness of such election to a paper which shall be returned by the judges of the precinct to the recorder of voters, to be filed by him among the papers of his office, and be subject to inspection by any qualified voter;" that it follows under the operation of the rule, *expressio unius, exclusio alterius*, that the legislature intended that the registration lists and poll books should not be subject to inspection. In other words, the argument is, that as the legislature in section eighteen of the statute provided as to that class of papers subscribed by the voters at the poll, who elect a judge to serve in place of one who fails or refuses to serve, that they should be open to inspection, and in the same section as to another class of papers, viz.: registration lists and poll books, only provided that they should be "securely kept" by the recorder, that it, therefore, follows that inspection of the latter class of papers was intended to be denied.

We think the statute is susceptible of a more reasonable solution than the one contended for. It is this; inasmuch as the paper to be signed by the voters at the poll who elect a judge to fill the place of one appointed who fails or refuses to serve, does not emanate from any officer known to the election law, but from

private persons, and inasmuch as doubts might arise in consequence of this fact. as to whether such a paper when returned to the recorder would be such a record as under the general rule would be subjected to inspection, the general assembly, to make that plain, which would otherwise have been involved in doubt, expressly provided that such papers should be open to inpection. Besides this, it is provided by section twenty of said act, that the ballots after being counted shall be placed in the ballot boxes, which are to be sealed and delivered by two judges of each election precinct to the recorder of voters, who is required to keep them safely for twelve months, and not allow the same to be inspected or handled, unless in a case of contested election, or unless the same shall become necessary to be used in evidence, and then only on the order of a proper court. Now here is one class of papers required to be kept safely by the recorder, which it is declared shall not be inspected, except under the circumstances therein mentioned, and it would follow from this, under the rule invoked by counsel, that all other classes of papers in the recorder's office, the inspection of which is not forbidden, would be open to inspection.

By the act of 1883, there is only one thing on which the seal of secrecy is stamped, and that is the ballot cast by the voter, and to this the judges and clerks of the election are forbidden, under penalty, from disclosing how any voter voted, and the ballots when counted are securely sealed in the ballot boxes, returned to the recorder, and are not to be inspected by him or anybody else, until the seal is broken in case of contested election, or when it becomes necessary to use them in evidence, and only then on the order of a proper court. It is also argued that it is against the policy of the law and destructive to the secrecy of the ballot to allow the poll books to be inspected.

We are unable to see the force of this argument, but, on the contrary, if it be a fact, as it is averred to be by relator, that he was a candidate for the office of city marshal, and received a majority of the legal votes cast at the election, and by fraud or mistake the certificate of election was denied to him and given to another, public policy demands the exposure of the fraud and the rectification of the mistake, and that all proper facilities should be afforded to bring about these results. Nor can we see how an inspection of the poll books tends either to destroy or impair the secrecy of the ballot. While the inspector would learn from it who voted, he could not learn how or for whom the voter voted. While we regard the poll books as belonging to that class of public records, open to inspection when the applicant who desires to inspect them, shows that the purpose of the inspection is to vindicate some public or private right, the courts will by mandamus compel the inspection on condition that the inspection be made "under such reasonable rules and regulations as the court or officer having them in charge may impose." Whether mandamus will or will not lie to compel an inspection of poll books when it is sought simply for the gratification of curiosity without any purpose to vindicate either a private or public right, is not necessary to determine in this proceeding, as it does not present such a case. The relator claims that by reason of his receiving a majority of the votes cast at the election, he acquired a right to the office of city marshal, and desires the inspection asked for as a means of enforcing this right.

It is also contended that the peremptory writ should be refused on the ground that under the constitution and laws of the state, no provision is made for contesting an election of a city officer. This question we will not anticipate, but say of it, as was said by Judge Thayer in a clear and conclusive opinion filed by counsel as part of

their argument, that, "the question is not whether the statutory remedy under section 5528, or any other legal remedy, is in point of fact open to the relator, but whether the application is made in good faith by an interested party, for the establishment of his individual right, and in pursuit of a remedy recognized by law to which relator supposes himself to be entitled." If the application is made in good faith, and there seems to be no good reason to doubt that it is so made, the application should be granted.

Judgment affirmed. All concur. Sherwood, J., expressing himself in a separate opinion.

SHERWOOD, J., CONCURRING.—I have no doubt that the relator is entitled to the relief he seeks, whether as a citizen or whether as a contestant. For the latter purpose he states such facts as entitle him to a standing in court, and to the enforcement of the specific right to which he lays claim. For the former purpose the simple allegation that petitioner is a citizen, without more, is the sesame which unlocks the gate of mandatory authority whenever an officer, whose functions are merely ministerial, refuses to perform his office and thereby causes detriment to the public interest. On this point an accepted authority says: "Where the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty, the people are regarded as the real party, and the relator at whose instigation the proceedings are instituted, need not show that he has any legal or special interest in the result, it being sufficient to show that he is a citizen and as such interested in the execution of the laws." And after citing numerous authorities in support of the position, the author adverts to the views to the contrary taken in some of the states, and then observes: "However satisfactory the reasoning of the courts in the states here referred to

may appear, the undoubted weight of authority supports the doctrine as laid down in the preceding section." High Extra. Leg. Rem. (2 Ed.) secs. 431, 432, and cases cited ; *1b.* sec. 416.   And in a subsequent section the learned writer cites instances where a private citizen has been permitted to assume the role of relator in proceedings by mandamus to compel municipal authorities to maintain and keep open a bridge, these being legal duties of the authorities ; to compel highway commissioners to comply with their duty in opening a public road ; and in other matters of the enforcement of a strictly public right as *ex. gr.*, the canvassing of election returns, a case very closely analogous to the case at bar, any citizen may be relator in mandamus proceedings. And in the same section it is observed in immediate connection with these instances : " In all such cases the refusal of the officers to act is no more the concern of one citizen than of another and it is the right, if not the duty, of every citizen to interfere and see that the public grievance is remedied.   * * *  And the rule, as sometimes stated, that the relator must show an individual right to the thing sought, is to be taken as applicable only to cases where individual interests are affected, and it has no reference to cases where the interest is common to the whole community, or to the public at large."   *Ib.* sec. 433, and 9 Cent. L. J. 362.

The cases cited to uphold the doctrine just announced yield it the most abundant support and leave no doubt of the stable basis on which it rests.   A recent case, that of *Ferry v. Williams*, 41 N. J. Law, 332, adds to the weight of judicial decision.   In that case a citizen of Orange being desirous to know whether the charter provisions of that town had been observed in respect to licensing saloons, requested of the collector an inspection of the letters on which the licenses had been granted. This request being denied by the collector and the common council, on appeal to them, backing him therein, the citizen thereupon applied to the Supreme Court of the

state for a mandamus to compel the desired inspection; and although he showed, as remarked by Dixon, J., "no interest to be subserved by an inspection of these letters, except that common interest which every citizen has in the enforcement of the laws and ordinances of the community wherein he dwells," the court awarded a peremptory writ after a full and exhaustive discussion of the authorities and of the principle of law which they assert. In the case just cited, the relator asserted that he had the right of inspecting the letters, and the collector denied this, and this was the point in judgment, and the learned judge, who delivered the opinion of the court, expressly states that whether such a right existed, depended on *general principles*, "since the statutes of the state are silent upon the subject;" and it was then ruled that the letters were documents of a public nature, which relator, by reason of his common interest in the enforcement of the laws, had the right to inspect.

And the remark of Lord Denman in *Rex v. Justices*, *etc.*, 6 A. & E. 84, is there approvingly quoted, that: "The court is by no means disposed to narrow its authority to enforce by mandamus the production of every document of a public nature in which any citizen can prove himself to be interested. For such persons, indeed, every officer appointed by law to keep records, ought to deem himself for that purpose a trustee." The case cited from New Jersey is well nigh decisive of the one at bar on both these points: First. The right of citizenship alone conferring the right of relatorship in cases of this sort. Second. That the poll books are public records and open as such to every citizen's inspection. That the first point is settled by the authorities quoted is abundantly clear. This being true, the second, though not expressly ruled, would seem logically to follow; for surely a poll book or things of that nature ought to occupy fully as high a documentary plane as do letters on which a saloon license is granted. To my mind, however, the

second point is quite too plain for discusssion and needs neither argument nor authority in its support. The records being public ones ; records pertaining to the preservation of the evidence of the exercise of one of the highest and most sacred rights of a freeman ; a right which constitutes the foundation stone of American liberty and national government, it is not too much to say that the right, within all reasonable bounds, of inspecting such records is no less broad than the right of citizenship on which it rests.

And it may be further observed, that though, undoubtedly, a contestant or citizen in the circumstances of this case, might have his action on the bond of an officer who gives bond, or his ordinary action against the recorder of voters, yet this does not by any means supersede or preclude resort to mandamus ; for the reason and the test in such cases is that mandamus is the only remedy which will secure to the party complaining, the specific relief to which, as already announced, he is clearly entitled. High Extr. Leg. Rem., sec. 82, and cases cited. For these reasons the judgment should, in my opinion, be affirmed. I have deemed it best in this separate opinion to place the right of relator to a peremptory writ on the right of citizenship as well as on that of being a contestant; for if his right to inspection of the poll books, etc., is made to turn *alone* on his claim as a contestant, as I understand the majority opinion to go, and there should be no *form* in which contestant can try his right in that respect, as is expressly alleged in the return, it is quite too obvious for discussion that a peremptory writ would be fruitless, and should, therefore, be denied. Henry, C. J., concurs with me.