THE STATE *ex rel.* WEAR *et al.* v. FRANCIS *et al.*, *Police Commissioners of St. Louis, Appellants.*

1. **Supreme Court**: JURISDICTION. Where a cause is appealed to the Supreme Court on the ground that a constitutional question is involved, under the constitutional amendment of 1884, the court acquires jurisdiction of and will determine the whole case.

2. **Mandamus**: PARTIES. A private citizen is a competent party to a mandamus proceeding to compel public officers to enforce a city ordinance.

3. **Statute**: CONSTITUTION. The act of the legislature of March 4, 1857, authorizing a vote to be taken in the cities of St. Louis county on the proposition to sell refreshments of any kind (distilled liquors excepted) on any day of the week is not unconstitutional as being a delegation of legislative power.

4. ————: ELECTION: MAJORITY OF VOTERS. Where a law requires a vote to be taken, and a majority of the legal voters is mentioned therein as being necessary to carry the proposed measure, a majority of all the legal voters entitled to vote is contemplated by the law, and not simply a majority of those voting.

5. ————. The said act of March 4, 1857, was merely provisional in its character. It did not directly repeal, nor was it intended so to repeal, the law which inhibited the sale of fermented liquors on Sunday.

6. **Mandamus**: PUBLIC OFFICERS. While in matters in which public officers exercise a discretion, the writ of mandamus will lie to compel them to act, yet it will not dictate the terms of said discretion.

7. ————: ST. LOUIS BOARD OF POLICE COMMISSIONERS. A writ of mandamus will not issue to compel the board of police commissioners of the city of St. Louis to arrest and prosecute certain named persons for having violated the state law against selling fermented liquors on Sunday.

8. ————: ————. Such writ will, however, lie to compel said board to vacate an order made by it directing the chief of police of the city not to interfere with the sale of wine or beer on Sunday.

9. ————: ————. The judgment in this case reversed, and cause remanded to enable suitable amendments to be made to the alternative and peremptory writs in conformity with opinion rendered in this case.

*Appeal from St. Louis City Circuit Court.*—HON. L. B. VALLIANT, Judge.

REVERSED AND REMANDED.

*Leverett Bell* for appellants.

(1) The law of 1857 is constitutional. It is the exercise of the right of local option, a familiar feature in American law, and one the validity of which is not open to question. *Locke's Appeal,* 72 Pa. St. 491; *Groesch v. State,* 42 Ind. 547; Cooley Const. Lim. [5 Ed.]. 147-8. Moreover the law of 1857 has been before this court in two cases (*State v. Winkelmeier,* 35 Mo. 103, and *State v. Binder,* 38 Mo. 451), and has in each case been treated and considered by the court as a constitutional enactment. (2) Ordinance 4869, permitting the sale of beer on Sunday, was duly adopted in accordance with the law of 1857, and became and was a valid ordinance, and operated to repeal the statute forbidding the sale of fermented liquors on Sunday in St. Louis. *State v. Binder,* 38 Mo. 451; *State v. Clark,* 54 Mo. 17. The decision below, that there has never been any power in the corporate authorities of St. Louis to license the sale of wine and beer on Sunday, directly conflicts with *State v. Binder,* 38 Mo. 451. (3) Ordinance 5421 did not repeal or supersede ordinance 4869. Bishop on Written Laws, sec. 160. (4) The repeal of the act of 1857, by the act of March 28, 1887, did not revive the state law in force in 1857, prohibiting the sale of beer on Sunday. R. S., sec. 3148; *State v. DeBar,* 58 Mo. 395. (5) The amendment to the Revised Statutes, made in 1883, and known as the Downing law, did not repeal the law of 1857. A general statute, although inconsistent with the provisions of a prior local law, will not repeal the latter unless there is something in the general law that makes it manifest that the legislature

contemplated and intended a repeal. *State v. McDonald*, 38 Mo. 529; *State v. Fiala*, 47 Mo. 320. The Downing law of 1883 is an amendatory, not an original, act. It changes an existing system, without creating a new one. It amends sections 5438, 5440, 5441, 5442, 5456 and 5464 of the General Statutes, and repeals section 5462, and enacts a new section in lieu thereof. The above sections are embraced in chapter 98 of the Revised Statutes. Section 5456 of the General Statutes, as it existed prior to the Downing law, forbade the sale of intoxicating liquors on Sunday. This provision was introduced into the statute in 1855. The amendment of the section by the Downing law was to prohibit such sale also on any general election day, in addition to Sunday. The legislature, in making this amendment in 1883, had no intention of changing the law with reference to the sale of liquors on Sunday in St. Louis. The revision of a law does not have the effect of making the revised law entirely original, so as to be construed as though none of its provisions had effect but from the date of the revised law, and when a former provision is contained in a revised act it operates only as a continuance of its existence, and not as an original act. *St. Louis v. Alexander*, 23 Mo. 509; *Cape Girardeau v. Riley*, 52 Mo. 424.

*Henry T. Kent* and *Boyle, Adams & McKeighan* for respondents.

(1) The act of 1857 was void and unconstitutional, as an attempt to delegate to the people of the corporate cities within the county of St. Louis the law-making power of the state, which is especially reserved for the legislative branch of the government, and cannot be delegated. *Lammert v. Lidwell*, 62 Mo. 188. (2) Admitting the act of 1857 to be valid and within the constitutional limits, the permission to the municipal authorities

of St. Louis to sell fermented liquors on Sunday was never granted within the contemplation of law; that is to say, that, at the general election in April, 1858, there were some thirteen thousand votes polled, of which only seven thousand voted on the refreshment proposition, five thousand for and two thousand against. This was not a majority of the legal vote as required by law. The majority as construed by the Supreme Court meant a majority of all those voting at that election, and not those voting simply on the refreshment proposition. *State v. Winkelmeyer*, 35 Mo. 103; *State ex rel. v. Brassfield*, 67 Mo. 331; *State ex rel. v. Sutterfield*, 54 Mo. 591; *State ex rel. v. Mayor*, 73 Mo. 435. (3) Admitting, however, that legal permission was given to the city of St. Louis to pass ordinance number 4869, the twelfth section of which authorized the sale of fermented liquors on Sunday, said ordinance itself was repealed by ordinance number 5421, which latter ordinance was repealed in express terms by ordinance number 7624½ of the revised ordinances of the city of St. Louis of 1871, page 525. *State v. Rolla*, 77 Mo. 126; *State v. Smith*, 14 Mo. 152; *Leighton v. Walker*, 9 N. H. 59; *Towle v. Marrett*, 3 Greenl. 22; *United States v. Tyson*, 11 Wall. 88; *State ex rel. v. Hudson*, 78 Mo. 302. (4) The record fully discloses a clear legal right in the relators, a corresponding duty upon the part of the defendants, and a want of adequate and specific remedy, except by way of a writ of mandamus, which is the proper remedy to pursue. High on Ex. Remedies, sec. 1; *State ex rel. v. Garesché*, 65 Mo. 489; *State ex rel. v. Railroad*, 86 Mo. 13; *State ex rel. v. Laughlin*, 75 Mo. 358; *People ex rel. v. Bryne*, 9 Abbott's New Cases, 137; *People ex rel. v. Mayor*, 59 How. Pr. 278.

SHERWOOD, J.—This cause comes here on the appeal of those who were respondents in the circuit court, that court having awarded against them a peremptory writ.

The only ground upon which this court can take jurisdiction of this cause is the fact that a constitutional question is involved therein, but this being the case carries with it, under recent constitutional amendments, the necessity of, and the jurisdiction for, determining the whole case.

I. Before going into the merits of the case, however, a preliminary question must first be determined ; it is this, whether the relators, being merely private citizens, are proper parties to this proceeding. In *State ex rel. v. Hoblitzelle*, 85 Mo. 620, it was ruled that the relator being a *contestant* for an office, had a right to have an inspection of the poll-books relating to his election. But in the minority opinion it was declared that, where a public right is involved, and the object is to enforce a public duty, the people are regarded as the real party, and in such case the relator need not show any legal or special interest in the result, the fact that he is a citizen, and, as such, interested in the execution of the laws is the sesame which unlocks the gates of mandatory authority whenever an officer whose functions are merely ministerial, refuses to perform his office and thereby causes detriment to the public interest. In the subsequent case of *State ex rel. v. Railroad*, 86 Mo. 13, the position of the minority was fully endorsed, some of the same authorities being cited in its support. The great weight of judicial decision supports this view. This point must, therefore, be ruled in favor of the relators.

II. The act of 1857, now to be considered, is entitled, "An act confirming certain power to the citizens of St. Louis county," and is as follows : 

"Section 1. That the corporate authorities of the different cities in the county of St. Louis shall have the power, whenever a majority of the legal voters of the respective cities in said county authorize them so to do,

to grant permission for the opening of any establish-
ment or establishments within the corporate limits of
said cities for the sale of refreshments of any kind
(distilled liquors excepted) on any day in the week.

"Section 2.   Any person, who shall on a Sunday
sell or offer for sale, within the corporate limits of said
cities, any distilled liquors, or any composition of which
distilled liquors form a part, shall be punished by a fine
of not less than ten, nor more than fifty dollars.

"Section 3.   The provisions of the first section of
this act shall not be construed as authorizing the sale of
ardent spirits on any day mentioned, except as now by
law allowed.

"Section 4.   All acts and parts of acts conflicting
with the provisions of this act are hereby repealed.
This act to take effect from its passage."

Approved March 4, 1857.   Laws 1856-7, p. 673.

It is claimed that this act is unconstitutional, as
being a delegation of legislative power.   This contention
cannot prevail, for the reason that the power which the
legislature confers upon municipal corporations when
granting them charters, with authority to pass ordi-
nances, etc., for local self-government, has never
been considered a delegation of legislative power,
and does not make an exception to the rule that
such legislative power, conferred upon the General
Assembly, is to be exercised by that body alone and not
to be delegated to others.   *State v. Field*, 17 Mo. 529;
1 Dill. Mun. Corp., sec. 308 and cas. cit.; *Metcalf v.
City*, 11 Mo. 103.   And whenever the legislature has the
power, originally, to confer upon a municipality
authority to enact ordinances and by-laws, such power
embraces within its scope the right, by subsequent leg-
islation, to enlarge the chartered powers of a munici-
pality, by enactments similar to those specified in the
act under consideration, and to prescribe the methods in

which such additional powers shall be exercised.' The power being conceded, the *mere method* of its exercise becomes immaterial. *State v. Cook*, 24 Minn. 247 ; *State v. Noyes*, 30 N. H. 279 ; *Commonwealth v. Bennett*, 108 Mass. 27.

Of course, these remarks are subject to those restrictions contained in the organic law, forbidding the legislature to pass "*local or special laws regulating the affairs of counties, cities, etc., or, incorporating cities, etc., or changing their charters.*" But at the time the act of 1857 was passed, there were no such constitutional prohibitions in existence, no such limitations on the free exercise of legislative power. It follows from the premises that the law in question is not obnoxious to any constitutional objection. It is proper to add here that no discussion of the constitutionality of that law has ever occurred in this court. In *State v. Winkelmeier*, 35 Mo. 103, any expression of opinion on the subject was expressly refused, and in the subsequent case of *State v. Binder*, 38 Mo. 450, notice was taken of such refusal in the former case, but still no judicial utterance was made concerning the matter.

III. The next point to be determined is, whether the ordinance passed in pursuance of the law just discussed, and known as ordinance number 4,137, was adopted by the requisite number of votes. That ordinance was passed March 26, 1858, and is as follows :

"Be it ordained by the City Council of the City of St. Louis :

"Section 1. That on the first Monday in April next, at an election to be held in St. Louis on that day, the legal voters of the city of St. Louis shall and may determine, by a vote, the question whether the city of St. Louis shall or may grant permission for the opening of any establishment or establishments, within the corporate limits of said city, for the sale of refreshments of any kind, distilled liquors excepted, on any day of the

week, in accordance with the provisions of an act of the General Assembly, of the state of Missouri, entitled 'An act confirming certain powers upon the citizens of St. Louis county,' approved March 4, 1857.

"Section 2. That such votes shall be by ballot and shall be in the following form, viz: for sale of refreshments and against sale of refreshments.

"Section 3. The mayor of the city shall by proclamation notify the voters of the city of St. Louis of the taking of such vote in the same manner as he notifies them of the election of city officers."

The rule established in *State v. Winkelmeier*, *supra*, is this: That, when by law, a vote is required or permitted to be taken, and a majority of the legal voters is mentioned in such law as being necessary to carry the proposed measure, that such majority must be a majority of all the legal voters entitled to vote at such election, and not *a mere majority of those voting thereat*. This rule, thus laid down, has since become firmly established in the jurisprudence of this state. *State ex rel. v. Sutterfield*, 54 Mo. 392; *State ex rel. v. Brassfield*, 67 Mo. 331; *State ex rel. v. Mayor*, 73 Mo. 435. The case of *State v. Binder*, *supra*, is based upon its own peculiar facts, and is not, perhaps, to be regarded as shaking the authority of *Winkelmeier's case*, or of the other cases cited. And even were it to be so regarded, the well-settled rule laid down in the later cases referred to, would still be regarded as better, safer, and more sound.

In *Winkelmeier's case*, *supra*, the returns of the election held in conformity to the ordinance mentioned, showed that, at such election, "more than thirteen thousand voters participated in that election, and that only five thousand and thirty-five persons voted in favor of giving to the city authority to grant permission to open establishments for the sale of refreshments on Sunday, and two thousand and one persons voted against it."

This quotation is made from the opinion of the court in that case, where it was ruled upon the basis of fact *thus* presented, that the vote of five thousand out of thirteen thousand voters was not the vote of a majority; that no authority was given to the city under the act quoted to grant the permission, and that, therefore, it was unnecessary to examine whether the corporate author-- ities of the city attempted to grant such permission, as any such grant would be void. On the other hand, in *Binder's case, supra,* a duly certified copy of the returns of the *same election* was given in evidence, by which it appeared "that the *whole number* of votes cast at said election was seven thousand and eighty-five, of which five thousand and fifty-one were given in the affirmative, and two thousand and thirty-four in the negative of the proposition." And upon *this* basis of fact it was held that the permission contemplated by the law of 1857, and by ordinance 4137, had been sanc- tioned by the requisite vote.

In the present instance all embarrassment as to the vote cast at that particular time is removed by reason of the following passage in the return of the respondents: "These respondents admit, as set out in said writ, that the then mayor of the city of St. Louis, on the —— day of March, 1858, issued a proclamation for an election of city officers to be held on the fifth day of April, 1858, and also to vote to authorize the corporate authorities of said city to grant permission for the sale of refreshments in said city on the first day of the week commonly called Sunday, as provided in said act of 1857, and said ordinance 4137; and that at said election there were cast for mayor of said city thirteen thousand and twenty-one votes, and for authorizing the said corporate authorities of said city to grant permission for the sale of refreshments as specified in said act of 1857, five thousand and fifty-one votes, and against it two thousand and thirty-four votes; but these respondents

deny, as set out in said writ, that no authority was given by said vote to said corporate authorities to grant said permission. On the contrary, these respondents aver that, under the law of the land, it was only necessary to confer said authority that a majority of those voting at said election on said proposition, referred to in said ordinance 4137, should vote to authorize said corporate authorities to grant said permission, and it was not necessary, as claimed or suggested in said writ, that a majority of all those voting at said election should vote for the granting of said permission."

These admitted facts bring this case within the principle of the rule heretofore announced ; and demonstrate that the corporate authorities of the city were never granted authority to pass any ordinance permitting the sale of fermented liquors on Sunday, and render needless any investigation as to the validity of any subsequent ordinance of the city permitting that to be done which had not been authorized to be done by the prerequisite majority vote. No discussion, therefore, will be entered upon relative to whether certain void ordinances, passed under the forms of law, but without any legal validity, were repealed or superseded by subsequent ordinances or revisions.

IV. The act of March 4, 1857, was merely *provisional* in its character. It did not directly repeal, nor was it intended to repeal, the law which forbade the sale of fermented liquors on Sunday, and so this point has been heretofore ruled. *State v. Winkelmeier, supra ; State v. Binder, supra.* This is easily proven : for if the fourth section of that act accomplished the repeal of the statute forbidding the sale of fermented liquors on Sunday, in the cities of St. Louis county, then no necessity existed for the permission to the city council to do, upon a majority vote taken, what had already been done by the fourth section of the law itself. This case is, therefore, freed from all necessity

for investigating questions relating to the repeal of one law and of the revival of the former law in consequence of such repeal, since in the view already taken no such question arises upon this record, as in accordance with that view, the Sunday law in force when the law of 1857 was passed remains still in force in the city of St. Louis, so far as concerns any action by the municipal authorities under that law, for the reason that the conditions pointed out in the first section of the act of 1857 were not performed. If this conclusion be correct, then it is wholly immaterial what force, effect, or operation be given to the "Downing Law" of 1883, or the act passed March 25, 1887, which repeals the law of 1857.

V.   And this conclusion is not in the least affected by the provisions of the charter of 1876, pleaded in the return of the respondents, as authorizing the municipal assembly of the city to regulate saloons, beer-houses, tippling-houses, dramshops, etc., as no ordinance was passed pursuant to such provisions. If such an ordinance had been passed prior, or subsequently, to the act of 1883, there might possibly be ground to consider whether the rule laid down in *State v. Clark*, 54 Mo. 17, and *State v. DeBar*, 58 Mo. 395, cited by respondents, would control in this case or not. *Schweitzer v. City of Liberty*, 82 Mo. 309, and cas. cit. As the record stands there is no room for a discussion or determination of the point.

VI.   This conclusion brings to view the only remaining question requisite to be discussed, which is, whether mandamus is the appropriate remedy to invoke in the case at bar. In discussing this point it is proper to quote the language of the peremptory writ, showing just what it requires respondents to do in the premises; it is as follows : "Whereupon, it is by the court considered and adjudged that a peremptory mandamus be issued to the said respondents directing and commanding them that they do enforce, within the limits of the city of St.

The State ex rel. Wear v. Francis.

Louis, the laws of the state of Missouri with reference to the prohibition of the sale of wine and beer, the same being fermented liquors, by licensed dram-shop keepers on the first day of the week, commonly called Sunday, and that they, the said respondents, cause to be arrested and prosecuted for the violation of said laws on the tenth day of July, 1887, the same being the first day of the week, commonly called Sunday, the following named persons, William Kessler, James Sweeney, Frank Mahon, and Joseph Schnaider. And further, that said respondents do make all needful and proper orders and directions to the police force of said city to prevent, within the said city of St. Louis, the violation of said laws, by licensed dram-shop keepers, in the sale of wine and beer, on the first day of the week, commonly called Sunday, and that they do direct and order the arrest of all such offenders. And further, that they, the said respondents, shall vacate their certain order, heretofore, to-wit: on the eighth day of July, 1887, made by them, directing the chief of police of said city not to interfere with the sale of wine or beer, on the first day of the week, commonly called Sunday.''

The duties of the respondents are thus set forth in the alternative writ: '' They shall at all times of the day and night, within the boundaries of the city of St. Louis, as well on water as on land, preserve the public peace; prevent crime and arrest offenders; protect the rights of persons and property; guard the public health; preserve order at every public election, at all public meetings and places, and on all public occasions; prevent and remove nuisances on all streets, highways, waters, and other places; provide a proper police force at every fire for the protection of firemen and property; protect emigrants and travelers at steamboat landings and railway stations; see that all laws relating to elections and the observance of Sunday, and regulating pawnbrokers, gamblers, intemperance, lotteries and

lottery policies, vagrants, disorderly persons, and the public health are enforced ; that, to enable the said board to perform the duties imposed upon them, they are authorized and required to appoint, enroll, and employ a permanent police force for the city of St. Louis, and to equip and arm the same as they may judge necessary ; that provision is made by law for a chief of police and subordinates, under the entire control of said board of police commissioners ; that said board of commissioners are also required to divide the city into the needful number of police districts, and provide each of said districts with a station-house with all things and attendants required for the same, and all such accommodations as may be required for the use of the police ; it is also further provided by law that, if the said board shall deem it necessary, they shall have authority to call out such of the military forces lawfully organized or existing in said city, or as they may see fit, to aid them in preventing threatened disorder or opposition to the laws, or in suppressing insurrection, riot, and disorder, at all times ; it is also provided that, whenever the exigency or circumstances may, in their judgment, warrant it, said board shall have the power to assume the control and command of all the conservators of the peace of the city of St. Louis, whether sheriff, constable, policeman, or others, and they shall act under the orders of said board, and not otherwise.''

In the extensive range of duties thus laid out by the provisions of the charter for the respondents to perform, it seems very plain that elements of discretion enter into the performance of some of them, and whenever this is the case, the rule is, that while the mandatory authority will be used to put public officers in motion, yet it will not dictate the terms in which such discretion is to be exercised. *State ex rel. v. Gregory*, 83 Mo. 123 ; High Ext. Leg. Rem., secs. 24, 43, 44, and cas. cit. In regard to the duties of respondents respecting the observance of

Sunday this element of discretion is very noticeable ; they are to "see that all laws relating to the observance of Sunday are enforced." How is this purpose to be accomplished? It may be done in a variety of ways, either by a direct arrest of the offender or by closing a saloon if kept open on Sunday, if that is the nature of the offence, or by setting on foot other suitable criminal proceedings, and by warrant or by a summons a person may be brought before the court of criminal correction to answer for any misdemeanor. 2 R. S., p. 1514, sec. 19.

In order that a writ of mandamus may issue, it being an extraordinary remedy, two prerequisites must exist : it must appear, first, that the relator has a clear legal right to the performance of a *particular act or duty*, and, second, that the law affords no other adequate or specific remedy to secure the enforcement of the right and the performance of the duty which it is sought to coerce. High Ext. Leg. Rem., sec. 10. In the case at bar, it will be observed that the peremptory writ, not confining itself to the performance of a particular act, commands that *several* particular acts be done by respondents, among them that four persons be arrested and prosecuted for past offences, and that a particular order made by respondents, directing the chief of police not to interfere with the sale of wine or beer on the first day of the week, commonly called Sunday, be vacated. In addition to these particular acts the writ commands the performance of several acts in general. It is needless to say that there is no warrant for a premptory writ so broad in its terms and so various in its commands.

Again, on the mere admission of the respondents that four citizens have done certain acts, the latter are to be arrested and prosecuted without affidavit and without warrant. This is further, it seems to me, than the mandatory authority of a court extends. Indeed, I have found no precedent for a mandamus for the arrest

of any one. It is the duty of a sheriff, as a conservator of the peace, to cause all offenders against law, in his view, to enter into recognizance with surety to keep the peace, etc. R. S., sec. 3889. It is also his duty to quell and suppress assaults and batteries, riots, affrays, and insurrections, to apprehend and commit to jail all felons and traitors, and execute all process directed to him by legal authority. R. S., sec. 3891. And yet it is believed that no instance can be found where a mandamus has issued commanding a sheriff to quell a riot or to arrest a criminal. The fact that no such precedent can be found argues very strongly against the exercise of such authority. It is very easy to see that if the process of mandamus could be employed in this ordinary way, that extraordinary writ would soon descend from its high plane and become very commonplace. But notwithstanding what has been said, it does not thence follow that relators are not entitled to any redress in this proceeding. And it does not follow, because the respondents have some margin of discretion in the performance of their duty in respect to all laws relating to the observance of Sunday, that, therefore, they are at liberty to refuse to take any action in the premises, and to foreclose themselves or their subordinates from the performance of an obvious duty, as was attempted in the order aforesaid. In so far as that particular order is concerned, the relators are entitled to the remedy they seek.

The judgment will be reversed and the cause remanded, with directions to allow suitable amendments to be made in the alternative and peremptory writs in conformity with this opinion. High Extra. Leg. Rem., sec. 519 ; R. S., sec. 3585 ; *School Dist. v. Lauderbaugh*, 80 Mo. 190. When such amendments have been made, the circuit court will issue its peremptory writ, commanding that respondents vacate the order heretofore

mentioned.   Ray, J., absent ; the other judges concur ;
Norton, C. J., and Black, J., file concurring opinions.

BLACK, J., CONCURRING.--In the view I take of this
case, it is unnecessary to express any opinion upon the
question whether the vote taken under the act of 1857
gave the corporate authorities of St. Louis power to pass
ordinance number 4869, or any ordinance on the subject.
I am satisfied the legislature intended, by the act of
March 24, 1883, to make the dram-shop law apply to all
cities in the state, St. Louis not excepted, and that the
repealing section accomplished that purpose.  This being
so, the act of 1857 was thereby repealed, and the dram-
shop law, as amended by the act of 1883, became the
law in St. Louis as elsewhere throughout the state.
With this conclusion, I agree as to what is said in the
opinion just filed in respect of the remedy by the writ
of mandamus.

NORTON, C. J., CONCURRING.—I concur in the above
opinion, not only for the reason that, under the facts
stated in regard to the vote taken in 1858, as to whether
the sale of fermented liquors on Sunday should be per-
mitted in the city of St. Louis, such vote did not
authorize the passage of the ordinance in question, and
this was expressly so held in the case of *State v.
Winkelmeier*, 35 Mo. 103, but for the additional reason
that, inasmuch as the Downing law contains a provision
expressly repealing all acts or parts of acts inconsistent
with it, the act of 1857, being repugnant to, and irrecon-
cilably inconsistent with, the Downing law, is by neces-
sary implication repealed.   But whatever doubts, if
any, might exist as to the correctness of the position last
stated, such doubts are entirely removed by the act of
1887, which in express terms repeals said act of 1857.