# STATE OF MISSOURI,

AT THE

## APRIL TERM, 1888.

| 96 | 13 |
|---|---|
| 99 | 295 |
| 96 | 13 |
| 106 | 515 |
| 96 | 13 |
| 155 | 328 |
| 0155 | 335 |
| 96 | 13 |
| 166 | 142 |

*(Continued from Volume 95.)*

---

THE STATE *ex rel.* CONRAN *et al.* v. WILLIAMS,
*Recorder of Voters.*

1. **Mandamus : RETURN.** A return to an alternative writ of *mandamus* must conform to the common-law rules.

2. ———— : ————. A denial in the return on information and belief is insufficient and material averments of the writ so denied will be taken as admitted.

3. **Registration List of Voters : ST. LOUIS CITY : PUBLIC RECORDS.** The registration list of voters in the city of St. Louis are public records and are open to inspection and to the taking of copies like other public records.

4. ———— : COPIES : PRIMARY ELECTION. The recorder of voters should permit copies of such lists to be made for use at a primary election
   † held by a voluntary political organization under the act of the legislature of March 27, 1875.

( 13 )

The State ex rel. Conran v. Williams.

5. ———:. ———: ———. The recorder, however, will not be required to allow such copies until the notice required by law of such primary election has been given and until a real occasion for the use of the lists has arisen,

## *Mandamus.*

PEREMPTORY WRIT DENIED.

*C. B. Stark* for relators.

(1) The registration books and registration lists of the voters of St. Louis, being required by law to be made up and kept, are public documents. *State ex rel. v. Hoblitzelle,* 85 Mo. 620 ; 1 Rap. & Lawr. Law Dic. "Documents," 406 ; 1 Whart. Ev., secs. 640, 642 ; 1 Best Ev. [Ed. 1875] 407. (2) Documents of a public nature are open to the inspection (*a*) of every citizen. *State ex rel. v. Williams,* 41 N. J. L. [12 Vroom] 332 ; *People ex rel. v. Cornell,* 47 Barb. 329 ; *Commonwealth ex rel. v. O'Donnell,* 12 W. N. C. 291 ; *State ex rel. v. Hoblitzelle,* 85 Mo. 620 ; 2 Dillon on Mun. Corp. [3 Ed.] sec. 848 ; 1 Dillon on Mun. Corp., sec. 303, and note 1 ; Glover on Mun. Corp. 262 ; Moses on Mandamus, 152 ; Ang. & Ames on Corp. [8 Ed.] 681. (*b*) Of every person who has a direct interest in them. *State ex rel. v. Hoblitzelle,* 85 Mo. 620 ; 1 Whart. Ev., sec. 745, *et seq. ;* 1 Tidd Pr. 593, *et seq. ;* 2 Dillon on Mun. Corp. [3 Ed.] sec. 848. (3) The right to inspect public documents carries with it the incidental right to take copies of them. Abbott's Law Dic., "Inspection of Docu-ments ; " 2 Dillon Mun. Corp. [3 Ed.] sec. 848 ; Moses Mand. 152 ; Ang. & Ames Corp. [8 Ed.] secs. 681, 707 ; 3 Bac. Abb. [Evid.] 591 ; Tapp. Man. *52 ; 2 Wheat. Selw. 1101 ; 1 Tidd Pr. 592 ; *Commonwealth ex rel. v. O'Donnell,* 12 W. N. C. 291 ; *People ex rel. v. Cornell,* 47 Barb. 329 ; *Rex v. Great Farington,* 9 B. & C. 54 ; *King v. Lucus,* 10 East, 235 ; *King v. Babb,* 3 Dunf.

& East, 579 ; *Brewers Co. v. Benson*, Barnes' Notes, 236 ; *Richards v. Pattison*, Barnes' Notes, 235 ; s. c., Comyn's Reports, 555. (4) *Mandamus* lies to coerce the custodian of public documents to permit inspection to be made and copies to be taken when he refuses the demand of one having the right. *State ex rel. v. Hoblitzelle*, 85 Mo. 620. (5) A private person may move for a *mandamus* to enforce a public duty not due to the government as such. *State ex rel. v. Railroad*, 86 Mo. 13 ; *Railroad v. Hall*, 91 U. S. 343. (6) If the respondent elects to traverse the supposals of the alternative writ he must deny them positively and distinctly. High. Ex. Rem. secs. 460, 470 ; Moses Mand. 210 ; Ang. & Ames Corp. [11 Ed.] sec. 721 ; 2 Dill. Mun. Corp. [3 Ed.] sec. 876 ; *Commonwealth ex rel. v. Commissioners*, 37 Pa. St. 237 ; *Harwood v. Marshall*, 10 Md. 451. (7) Where several defenses are relied on in the return, they must be consistent, and if they be inconsistent or repugnant the entire return is bad. High Ex. Rem., secs. 463, 477 ; Moses Mand. 214. (8) Mere conclusions of law resulting from the suggestions of the alternative writ cannot be traversed. High Ex. Rem., sec. 468 ; Ang. & Ames Corp. [11 Ed.] sec. 721 ; *Harwood v. Marshall*, 10 Md. 451 ; *Commonwealth ex rel. v. Commissioners*, 37 Pa. St. 277. (9) A return which is argumentative is bad. High Ex. Rem., sec. 472 ; Ang. & Ames Corp. [11 Ed.] sec. 721 ; 2 Dill. Mun. Corp. [3 Ed.] sec. 778 ; *King v. Dock Co.*, 9 D. & R. 309 ; *Commonwealth ex rel. v. Commissioners*, 37 Pa. St. 237.

· *A. & J. F. Lee* for respondent

(1) The denials in the return on information and belief are sufficient. High on Ex. Rem., secs. 459, 492. (2) The return is not inconsistent. *Nelson v. Brodhack*, 44 Mo. 598 ; *Ledbetter v. Ledbetter*, 88 Mo. 68 ; *Rex v. Churchwardens*, 1 Cowp. 413 ; *King v. Mayor*, 5 T. R. 76. (3) There is no pretense that relators have

published the notice of election required by the primary-election law and for this reason, their case must fail. (4) The facts stated by relators do not entitle them to the relief they ask. *Mansfield v. Fuller*, 50 Mo. 338; *People v Ketchum*, 72 Ill. 212; *State ex rel. v. Hoblitzelle*, 85 Mo. 624; *People v. Walker*, 9 Mich. 330; *Hatch v. Bank*, 1 Rob. [La.] 470; *Sherburne v. Horn*, 45 Mich. 160; *State ex rel. v. Railroad*, 77 Mo. 147; *Rex v. Tower*, 4 M. & S. 162; *Rex v. Justices*, 4 B. & C. 891.

*Henry W. Williams pro se.*

Section eighteen of the act of March 31, 1883, provides that the recorder of voters, on the day before each election, shall "deliver to the judges of election two copies of the corrected registration lists of their respective precincts alphabetically arranged." These two copies are made up from the original registration books, which are not kept with the names in alphabetical order. They are the only copies which the law authorizes or requires the recorder to make, except a single copy to be furnished for the election of public school directors. The same section eighteen provides that "said copies of registration [furnished to the judges] shall, after each election, be returned by the judges to the recorder of voters, with the poll-books and election returns, and shall be by him securely kept." As the poll-books and election returns are to be returned on the night of the election (the recorder being required by the law to remain in his office until he has received the same), it follows that said two lists are in the hands of the judges only during the election day, and are to be returned to the recorder immediately after the polls are closed, to "be by him securely kept." Section twenty-eight prohibits, under penalty, the mutilation or carrying away of the original registration book or list of voters. It is contrary to the policy of the law to permit

registration lists to fall into the hands of irresponsible persons. Furnishing copies would practically nullify the law, which forbids such persons from having the original lists.

BLACK, J.—This case stands on a demurrer to the return made to the alternative writ of *mandamus*. The relators aver in the petition and writ that they constitute the democratic central committee of the city of St. Louis, the democratic party being a voluntary political organization ; that a general election will be held in this state on the sixth of November, 1888, for the election of various officers ; that a number of conventions are to be held by the democratic party to nominate candidates for such offices, and that delegates are to be selected from the city of St. Louis to attend those conventions ; that local officers, such as constables, are to be put in nomination by the party organization ; that, on the eleventh of April, 1888, the relators, as such committee, passed a resolution declaring it to be to the interest of the party to select the before-named delegates and the candidates for the local offices by a primary election, to be held under the primary-election law of 1875 ; that at the same time they instructed a committee to prepare and report plans and the form of notice to be given of such election ; that to hold such primary election it is necessary that the judges and clerks thereat should have copies of the registration books and registration lists in the custody of the respondent, who is recorder of voters under the act of 1883 ; and the command of the alternative writ is that respondent permit relators to inspect the registration books and lists, and take copies thereof.

1. In respect of some of the material averments of the petition, the respondent makes return thereto by saying that he has no knowledge or information sufficient to

form a belief as to whether, etc., reciting the allegation. This is true in respect of the allegation that the relators constitute the managing committee of said party in St. Louis ; and the relators challenge the sufficiency of such a denial.   The practice act permits this form of a denial in an answer in ordinary civil suits.   At the adoption of the practice act, in 1849, it was provided by section six of article thirty, that the act should not affect proceedings upon *mandamus* until otherwise provided.   At the present time, the article relating to amendments is in express terms made to apply to writs of *mandamus*, thus showing by clear implication that in other respects it does not apply.   Hence we held in *State ex rel. v. Burkhardt*, 59 Mo. 79, that the general provisions of the practice act allowing all persons having an interest in the suit to be made plaintiffs or defendants had no application to proceedings by *mandamus*.   It is, therefore, clear that the return must conform to the common-law rules ; and this is none the less so because the relator may plead to or traverse all or any of the facts stated in the return.

High says : "Unless, therefore, the alternative writ is quashed, the respondent is bound to make return and to set forth either a positive denial of the truth of the allegations contained in the writ on which the relator founds his claim for relief, or to state other facts sufficient in law to defeat the relator's right."   High on Extr. Leg. Rem., sec. 460.   Substantially the same rule is laid down in Moses on Mandamus, 210, and in Tapping on Mandamus, 390.   Every distinct and material allegation in the writ, if intended to be controverted, must be denied, and the traverse must be single, direct and certain.   *Harwood v. Marshall*, 10 Md. 451 ; *Commonwealth v. Commissioners*, 37 Pa. St. 237.   Tested by these rules, a denial on information and belief is insufficient, and the material averments thus attempted to be denied must be taken as admitted.   It may be

stated that some of the denials on information, etc., relate to averments in the writ which are either conclusions of law or wholly immaterial.

2.   Under the act of 1883, the recorder of voters must make a registration book for each election precinct; and the citizen can only vote in the election precinct where his name is registered, and in which he is registered as a resident.   Copies of these registration lists, as corrected by a board of revision anterior to each election, are made out by the recorder and delivered to the judges, and by them returned to the recorder after the election.   It is these lists of which relators desire to take copies, and which the respondent refuses to permit them to do, though it stands admitted that he permits them to freely inspect the books and lists.   The recorder seems to think that because he must safely keep these registration lists, that he ought not to permit copies of them to be made, but in this he is in error.   They are public records and open to inspection like other public records.   We said in *State ex rel. v. Hoblitzelle*, 85 Mo. 624: "While we regard the poll-books as belonging to that class of public records open to inspection when the applicant who desires to inspect them shows that the purpose of inspection is to vindicate some public or private right, the courts will, by *mandamus*, compel the inspection on condition that the inspection be made 'under such reasonable rules and regulations as the court or officer having them in charge may impose.'"

With greater reason may it be said, these registration lists are public records.   The right to inspect quite carries with it the right to take a copy.   We think the same rules of law may be applied to these lists that prevail in respect of the records of municipal corporations, as to which Dillon says: "If such a corporation should refuse *to give inspection* thereof to any person having an interest therein, or perhaps, for any proper purpose to any inhabitant of the corporation, whether he had

any special or private interest or not, a writ of *mandamus* would lie to command the corporation to allow such inspection, and copies to be taken, under reasonable precautions, to secure the safety of the originals." 2 Dill. on Mun. Corp. [3 Ed.] sec. 848. As to the records of municipal corporations, High makes this qualification to relief by the writ of *mandamus*: "It is, of course, essential to the exercise of the jurisdiction in such cases, that the relator should show some interest in the records which he seeks to inspect, and it may well be doubted whether the writ would, in any case, be allowed upon the relation of a mere stranger." High on Ex. Leg. Rem. [2 Ed.] sec. 330. If these registration lists can be of any use to the relators in holding their primary elections, then they have shown such an interest as entitles them to take copies.

The primary-election law of March 27, 1875 (Acts of 1875, p. 54), authorizes any voluntary political organization, by a majority vote of its city central committee, to hold a primary election for the selection of delegates, and for the nomination of candidates for public offices. The voters at the primary elections must be qualified to vote in the precinct where the election is being held at the next state or municipal election. To this extent the primary-election law defines the qualification of the voters ; and to this extent the registration lists will furnish the primary and best evidence of the qualifications of persons who seek to vote at such elections. In other respects the law gives the committee power to prescribe the qualifications of the voters, evidently having reference to their party affiliations.

The argument is made that the registration lists can be of no use or benefit to the relators, because they do not show who are and who are not democrats, and because out of the eighty thousand registered voters, only thirty-nine thousand belong to the democratic party. If one desired a copy of a·public record to

use in a litigated case, it would be no answer to his demand therefor to say, or even show, that the copy would not make full proof of the issues, or that it contained some matters of no value to him. The registration lists are certainly the best evidence of some of the indispensable qualifications of the voters, and that is enough.

It may be that the right of persons to vote at these elections can be tried wholly by the oath authorized to be administered by section four of the primary-election law; but, be that as it may, we are of the opinion that the registration lists are competent evidence at these elections, and we see no reason why they may not be used, and especially in view of the fact that the judges of such elections are sworn to protect the election from frauds. The law seems to throw its protecting arm around such elections, and we conclude that the recorder ought to permit copies of the registration lists to be made to use at such elections. No question of public policy forbids it.

3. There is another matter deserving of consideration, and it is this: Before an election can be held under the primary-election law, the managing committee must give public notice, stating, among other things, the purpose, time, and place of holding the elections, the qualifications of the voters, and that the election will be held under the "primary-election law." It is a conceded fact on the pleadings that no notice has been given. To take copies of these lists for all of the precincts must, to a considerable extent, interfere with the work of the recorder, and since it stands admitted that he has and does allow the relators free and full inspection of the books, which is sufficient for all preliminary purposes, we are of the opinion that he ought not to be required to allow the copies to be taken, until the notice has been given, and a necessity for the use of the copies made certain—until there is some real occasion for the use of

them. What we have said is enough to establish the right to take copies when there is a real occasion for their use.

The demurrer is overruled and the peremptory writ denied. RAY, J., absent; NORTON, C. J., and BRACE, J., concur in the result; SHERWOOD, J., concurs with me in all that is said.